UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE ZAGEL

MAGISTRATE JUDGE VALDEZ

| UNITED STATES OF AMERICA | ) | No. 08 CR 523 |
|---|---|---|
| v. | ) | Violations: Title 18, United States Code, Sections 1343 and 1346 |
| VANESSA S. FERRIZZI | ) | **INFORMATION** |

FILED
JUL - 1 2008
7-1-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The UNITED STATES ATTORNEY charges:

1. At all times material to this Information:

### The Entities

a. Hartmarx Corporation ("Hartmarx") was a Delaware corporation with its principal executive and administrative offices located in Chicago, Illinois. Hartmarx operated exclusively in the apparel business. Hartmarx's operations were comprised of a Men's Apparel Group and a Women's Apparel Group. Hartmarx was the largest manufacturer and marketer of men's tailored clothing in the United States. The Women's Apparel Group of Hartmarx was comprised of two subsidiaries: International Women's Apparel and Barrie Pace.

b. International Women's Apparel ("IWA") marketed women's career apparel and sportswear to department and specialty stores under owned and licensed brand names. IWA was a Texas Corporation, and was a wholly owned subsidiary of Hartmarx. IWA's executive office was located in Easton, Pennsylvania.

## The Defendant

c.      Defendant VANESSA S. FERRIZZI ("FERRIZZI") was an individual residing in Easton, Pennsylvania. FERRIZZI became employed at IWA, through a predecessor company, in 1981. In approximately 1993, FERRIZZI became the Controller for IWA. FERRIZZI served as IWA's Controller until she was terminated from the position in February 2003. As Controller, FERRIZZI's duties included fairly and accurately presenting IWA's financial position to Hartmarx in conformity with Generally Accepted Accounting Principles (GAAP). These duties included closing out IWA's monthly books. This entailed ensuring that all entries were made, verifying that the trial balances matched, and submitting the books to management at IWA for review prior to submission to Hartmarx. As Controller and an IWA employee, FERRIZZI owed IWA a duty of honest services.

2.      From in or about August 2001 to in or about February 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

## VANESSA S. FERRIZZI,

defendant herein, devised, intended to devise, and participated in a scheme to defraud IWA, Hartmarx, and Hartmarx's investors of money, property, and their intangible right of honest services by means of materially false and fraudulent pretenses, representations, and promises and material omissions, as further described below.

3.      It was part of the scheme that, beginning in or about 1999 and continuing to in or about at least February 2003, defendant FERRIZZI attempted to and did fraudulently

manipulate IWA's financial reporting to make IWA appear more profitable to its parent company, Hartmarx. Hartmarx, relying on the defendant's duty to provide honest services, unknowingly incorporated this manipulated and fraudulent financial information, including inflated net income figures, into its public filings made with the United States Securities and Exchange Commission.

4. It was further part of the scheme that defendant FERRIZZI made the following false and fraudulent entries, which had the effect of fraudulently inflating IWA's net income:

a. on IWA's Income Statement for November 1999, defendant FERRIZZI falsely reported the Finished Goods Reserve as negative $628,630, although as defendant FERRIZZI well-knew, the correct amount for this reserve, which had already been budgeted, was a positive figure of approximately $584,400;

b. during fiscal year 2000, FERRIZZI intentionally and improperly booked approximately $1,409,000 from excess markdowns/vendor credits into an accounts receivable account;

c. on IWA's Income Statement for the period ending March 30, 2000, defendant FERRIZZI falsely and fraudulently reported a Domestic Variance for the year to date as a negative $480,822, when, in fact, the budgeted amount for this account for that year was a positive $104,277;

d. on IWA's Budget versus Actual - Total Company report for the period ending November 30, 2000, defendant FERRIZI reported falsely and fraudulently:

-3-

       i.      for the month of November 2000, that IWA had a negative $92,886 sales commission expense, when, in fact as the defendant well-knew, a negative sales commission was inaccurate and reporting the true sales commission for the month would have reduced net income for that month by at least approximately $92,000;

      ii.     a Bad Debt Expense as negative $25,000, although as the defendant well-knew, the actual Bad Debt expense was not a negative number.

e.    on IWA's Projection Versus Actual Report for November 2001, defendant FERRIZZI reported falsely and fraudulently a "Recovery on Close-Out Sales" totaling $400,000, that she well-knew was false;

f.    in 2002, although she well-knew that IWA had incurred $581,000 in advertising liability, defendant FERRIZZI intentionally did not enter this liability properly and completely into IWA's financial statements;

g.    in May 2002, defendant FERRIZZI made some allowances entries that were completely fictitious for the purpose of making IWA appear more profitable than it in fact was by, among other things, recording allowances as positive $51,617, when they should, as defendant FERRIZZI well-knew, properly have been approximately negative $100,000;

h.    on IWA's Balance Sheet Liabilities for the period ending August 31, 2002, defendant FERRIZZI reported liabilities as negative numbers when they

should have been positive numbers; and reported "Other Accounts Payable" as negative $54,372, when it should have been positive; Accrued Payroll as negative $12,346 when it should have been a positive number and had been budgeted to be positive $556,000; Other Accrued Expenses as a negative $2,963 when it should have been positive and had been budgeted to be positive $624,000.

5. It was further part of the scheme that defendant FERRIZZI knew that the financial data she sent from IWA to Hartmarx would be consolidated with the financial information from other subsidiaries into Hartmarx's overall financial statements; the financial data would be sent from IWA in Pennsylvania to Hartmarx in Chicago electronically via a software program; and IWA's financial statements would be included in Hartmarx's quarterly reports on Form 10-Q and in its annual reports on Form 10-K, which would be filed with the United States Securities and Exchange Commission and made available to the public.

6. It was further part of the scheme that on or about December 23, 2002, defendant FERRIZZI signed a representation letter, also referred to as a rep letter or confirmation letter, which was sent from IWA to Hartmarx. In executing the December 23, 2002 rep letter, defendant FERRIZZI falsely represented the accuracy of the financial information IWA submitted to Hartmarx and fraudulently certified that IWA was disclosing everything that needed to be disclosed to the auditors.

7. It was further part of the scheme that in 2002, defendant FERRIZZI created an entry in IWA's financial statement showing that IWA had earned $975,000 in receivables in the fourth quarter, when, in fact, she knew that this was untrue. When Hartmarx internal auditors questioned defendant FERRIZZI about this entry, she created a spreadsheet falsely justifying this expense. Defendant FERRIZZI submitted this false spreadsheet from IWA's office in Easton, Pennsylvania to Hartmarx in Chicago, Illinois on January 9, 2003, via wire communication in the form of an email.

8. After discovery of the defendant's scheme, on March 4, 2003, Hartmarx filed a Form 8-K with the Securities and Exchange Commission disclosing that it had discovered accounting irregularities with IWA. On March 14, 2003, Hartmarx filed its annual report on a Form 10-K with the United States Securities and Exchange Commission in which it restated its previously issued financial statements for the years ending November 30, 2000, and November 30, 2001, and for the first three quarters of 2002. The effect of this restatement was to reduce consolidated earnings from $8.6 million to $6.7 million and to reduce earnings per share from $.29 to $.22 for the year ending November 30, 2000; increase the reported loss from $13.9 million to $17.8 million and earnings per share from a loss of $.46 to $.60 for the year ending November 30, 2001; change the previously reported earnings of $0.7 million to a loss of $ 0.4 million and earnings per share from a positive $.02 to a negative $.01 for the first three quarters of 2002 . Due to the restatement, total assets were reduced by $2.4 million, total liabilities were decreased by $1.3 million, and shareholders'

equity and equity per share were reduced by $1.1 million and $.03 million respectively as of November 30, 2001.

9. On or about December 20, 1999, in the Northern District of Illinois and elsewhere,

## VANESSA S. FERRIZZI,

defendant herein, did knowingly cause to be placed in an authorized depository for matter, for delivery by a private and commercial interstate carrier, a letter, namely a representation letter dated December 20, 1999 on International Women's Apparel Inc. stationary the accounting firm of Price Waterhouse Coopers LLC, 200 East Randolph Drive, Chicago, IL;

In violation of Title 18, United States Code, Sections 1341 and 1346.

_____
UNITED STATES ATTORNEY